NOBLE, DOING BUSINESS AS NOBLE TRANSIT CO., v.
UNITED STATES ET AL.

No. 511.   Argued April 6, 7, 1943.—Decided May 3, 1943.

---

*Messrs. Charles A. Lethert* and *C. D. Todd, Jr.* for appellant.

*Mr. Allen Crenshaw,* with whom *Solicitor General Fahy* and *Messrs. Daniel W. Knowlton* and *E. M. Reidy* were on the brief, for the United States et al.; and *Mr. Franklin R. Overmyer* for the Regular Common Carrier Conference of the American Trucking Associations et al.,—appellees.

*Mr. C. D. Todd, Jr.* filed a brief on behalf of the Contract Carrier Division of the American Trucking Associations, as *amicus curiae,* in support of appellant.

Mr. Justice Douglas delivered the opinion of the Court.

This is an appeal[1] from the judgment of a three-judge court (45 F. Supp. 793) which dismissed a complaint filed by appellant to review and annul certain restrictive provisions of an order of the Interstate Commerce Commission (28 M. C. C. 653), granting appellant a permit to operate as a contract carrier by motor vehicle under the Motor Carrier Act of 1935 (49 Stat. 543, 49 U. S. C. § 301), now designated as Part II of the Interstate Commerce Act. 54 Stat. 919.

Appellant filed an application for a permit as a contract carrier under the "grandfather" clause of § 209 (a) of the Act. That section provides that if the contract carrier or his predecessor in interest "was in bona fide operation as a contract carrier by motor vehicle on July 1, 1935, over the route or routes or within the territory for which application is made and has so operated since that time," he

---

[1] §§ 210 and 238 of the Judicial Code, 28 U. S. C. § 47a, § 345.

shall be granted a permit without more. And § 209 (b) provides that the Commission "shall specify in the permit the business of the contract carrier covered thereby and the scope thereof." [2]

The Commission found that appellant was not a common carrier of general commodities but a contract carrier [3] of specified commodities. It found in that connection that on and after July 1, 1935, appellant had been "in bona fide operation as a contract carrier" by motor vehicle "under individual contracts" with persons who "operate food canneries or meat-packing businesses, (a) of canned foods from Blue Island, Ill., to St. Paul, South St. Paul, Minneapolis, and Minnesota Transfer, Minn., and (b) of fresh meats, canned foods, dairy products, and packing-house products and supplies, from South St. Paul to Grand Forks, N. Dak., Chicago and Rockford, Ill., and points in that portion of Wisconsin on and east of the Mississippi River from the intersection of the Wisconsin-Illinois-Iowa State lines near Dubuque, Iowa, to La Crosse, Wis., and U. S. Highway 53 from La Crosse to Cameron, Wis., and on and south of U. S. Highway 8, and (c) of the commodities described in (b) from Chicago to St. Paul, Minneapolis, South St. Paul, Winona, and Rochester, Minn., and La Crosse, Wis., over irregular routes;" 28 M. C. C. p. 660. The Commission accordingly found

---

[2] Sec. 209 (b) also provides that the Commission shall attach certain terms, conditions and limitations to the permit. It goes on to state, however, that those conditions shall not "restrict the right of the carrier to substitute or add contracts within the scope of the permit, or to add to his or its equipment and facilities, within the scope of the permit, as the development of the business and the demands of the public may require."

[3] The term "contract carrier" is defined by § 203 (a) (15) as "any person which, under individual contracts or agreements," engages in the transportation by motor vehicle of "passengers or property in interstate or foreign commerce for compensation."

that appellant was entitled to a permit authorizing "the continuance of such operations."

Appellant's chief objection to that limitation of his rights under the "grandfather" clause is that the Commission has restricted the shippers or types of shippers for whom he may haul the specified commodities. His argument comes down to this: once the territory which he may serve and the commodities which he may haul have been determined, he should be allowed to haul these commodities for any one he chooses within those territorial limits. In the present case appellant hauled under contract miscellaneous supplies for Swift & Co. such as glue, paper, barrels, soap, bolts, thermometers, etc. His argument accordingly is that he should be allowed to haul the same items for any other person in the territory, whatever may be the business of that person and irrespective of the fact that appellant had never had any contract of carriage with him.

The Commission at one time seems to have followed that view. Longshore Contract Carrier Application, 2 M. C. C. 480, 481. But it no longer does. Keystone Transportation Co. Contract Carrier Application, 19 M. C. C. 475. In the latter case the power and duty of the Commission under § 209 (b) to specify in the permit "the business of the contract carrier covered thereby and the scope thereof" were reëxamined. It was held that that phrase meant "more than just the business of being a contract carrier within a defined territory. It is all-inclusive and connotes in addition to the business of being a contract carrier the exact and precise character of the service to be rendered by such carrier." 19 M. C. C. 493.

We agree. An accurate description of the "business" of a particular contract carrier and the "scope" of the enterprise may require more than a statement of the territory served and the commodities hauled. An accurate

definition frequently can be made only in terms of the type or class of shippers served. Unless the words of the Act are given that interpretation, permits under the "grandfather" clause may greatly distort the prior activities of the carrier. He who was in substance a highly specialized carrier for a select few would be treated as a carrier of general commodities for all comers, merely because he had carried a wide variety of articles. That would make a basic alteration in the characteristics of the enterprise of the contract carrier—a change as fundamental as we thought was effected by a disregard of the nature and scope of the holding out of the common carrier in *United States* v. *Carolina Freight Carriers Corp.,* 315 U. S. 475. If the business of the contract carrier were not defined in terms of the type or class of shippers served, that "substantial parity between future operations and prior *bona fide* operations" which is contemplated by the Act (*Alton R. Co.* v. *United States,* 315 U. S. 15, 22) would be frequently disregarded. The "grandfather" clause would be utilized not to preserve the position which the carrier had obtained in the nation's transportation system, but to enlarge and expand the business beyond the pattern which it had acquired prior to July 1, 1935. The result in the present case would be a conversion, for all practical purposes, of this contract carrier into a common carrier—a step which would tend to nullify a distinction which Congress has preserved throughout the Act. If such a metamorphosis is to be effected or if the appellant is to obtain a permit broader than the actual scope of his established business, the showing required by other provisions of the Act must be made. See § 206 (a), § 207, and § 209 (b).

Since the Commission did not apply an incorrect standard in defining the nature of appellant's business and its

scope,[4] our function is at an end. The precise delineation of an enterprise which seeks the protection of the "grandfather" clause has been reserved for the Commission. *United States* v. *Maher,* 307 U. S. 148; *Alton R. Co.* v. *United States, supra; United States* v. *Carolina Freight Carriers Corp., supra.*

We have considered the other objections raised by the appellant and find them without merit.

*Affirmed.*

MR. JUSTICE MURPHY took no part in the consideration or decision of the case.

---

[4] We do not accede to the suggestion that the permit specification clause in § 209 (b) is applicable only to new operators, not to "grandfather" applicants. The Commission has consistently taken the view that it covers both. Motor Convoy, Inc., 2 M. C. C. 197, 200; Wray Wible, 7 M. C. C. 165, 168; James P. Hunter, 13 M. C. C. 109, 112–113; Marine Trucking Co., Inc., 17 M. C. C. 615. That interpretation is entitled to "great weight." *United States* v. *American Trucking Assns.,* 310 U. S. 534, 549. It is consistent with the wording of § 209. Paragraph (a) requires a contract carrier to have a "permit" in order to operate as such; and it requires the Commission to issue the permit "without further proceedings, if application for such permit is made to the Commission as provided in paragraph (b)" within the prescribed time limitation.