**W. N. MOREHOUSE, Plaintiff,**

v.

**UNITED STATES of America and The Interstate Commerce Commission, Defendants.**

**Civ. No. 01145.**

United States District Court
D. Nebraska.

June 1, 1961.

Charles W. Singer, Chicago, Ill., for plaintiff, W. N. Morehouse, and intervening plaintiffs, The Emery Transp. Co. and Little Audrey's Transp. Co., Inc.

John S. Burchmore, Chicago, Ill., for intervening plaintiff, Kraft Foods.

Dennis G. Lyons, Washington, D. C., for intervening plaintiff, Lever Brothers Co.

Fritz F. Kahn, Washington, D. C., for the defendants the United States and Interstate Commerce Commission.

Before JOHNSEN, Circuit Judge, ROBINSON, Chief Judge, and STEPHENSON, District Judge.

ROBINSON, Chief Judge.

This action was instituted by W. N. Morehouse (Plaintiff) against the United States of America and the Interstate Commerce Commission (Commission) pursuant to the provisions of 28 U.S.C. §§ 1336, 1398, 2284, 2321 through 2325, and section 10 of the Administrative Procedure Act, 5 U.S.C.A. § 1009, to enjoin, annul and set aside the report and orders of the Commission, entered September 24, 1959, and January 25, 1960, Docket No. Mc–C–2244. W. N. Morehouse—Investigation of Operations, wherein the Commission held that plaintiff was engaged in the transportation of soap and related commodities which were not produced or distributed by a meat packinghouse; in violation of the Interstate Commerce Act, 49 U.S.C.A. § 306(a) (1); and requiring plaintiff to cease and desist from conducting such transportation.

The complete record made before the Commission, including all reports and orders is before the Court. The Court has jurisdiction over this case.

Applications for leave to intervene as plaintiffs were filed by Kraft Foods, a division of National Dairy Products Corporation, The Emery Transportation Company, Little Audrey's Transportation Company, Inc. and Lever Brothers Company. Leave was granted by the Court to the intervenors to file their complaints and their briefs on the issues raised in this proceeding.

Pursuant to statute, the matter came on for final hearing before a duly designated three-judge District Court on the 6th day of May, 1961. Written briefs were filed, the case was orally argued by respective counsel, and the case was submitted.

The evidentiary facts, as here pertinent, are not in dispute.

Plaintiff is an individual engaged in the business of a common carrier by motor vehicle pursuant to certificate of public convenience and necessity issued by the Commission, February 26, 1942, pursuant to section 206(a) of the Interstate Commerce Act, 49 U.S.C.A. § 306 (a).

Plaintiff's certificate, issued under the "grandfather" clause of section 206(a) of the Act, authorized, so far as pertinent, the transportation of "packinghouse products and supplies", from Omaha, Nebraska, to Chicago, Illinois, Sioux City, Iowa, and Denver, Colorado, over irregular routes. Since receiving his "grandfather" certificate, plaintiff has, from time to time, transported soap and soap products for Lever Brothers Company and Climalene Company, westbound from Chicago. Specifically, during a 2 month period in 1958, he transported 12 separate shipments for Lever Brothers Company of vegetable oil, washing compound, washing compound liquid, soap, soap powder, and Lux liquid, from Chicago and Hammond, Indiana, to various chain grocery stores, wholesale storage companies, and a public warehouse at Omaha, Nebraska, and Sioux City, Iowa, and 2 shipments for Climalene Company of washing powder and washing compound from Chicago to an Omaha public warehouse and a Sioux City wholesale grocery company. The shippers in question were not meat packing houses but were manufacturers and distributors of soap, soap products, cleaning compounds, detergents, vegetable oils and oleo margarine. The consignees also were not meat packinghouses, meatpackers, or slaughterers. When advised by the Commission's field representative that such operations were unauthorized, plaintiff discontinued transporting the items in question.

The proceeding before the Commission was instituted by Division 1 of the Commission on its own motion to determine whether plaintiff was engaged in the transportation of certain commodities not authorized by his certificate. By the terms of the order instituting the investigation, Morehouse was named as respondent.

A hearing was had before a hearing examiner at Omaha, Nebraska, on September 25, 1958. The parties appeared and presented evidence. The hearing examiner filed his report and recommended order on February 3, 1959, finding that the commodity description "packinghouse products" in plaintiff's certificate did not authorize the transportation of washing compound, washing powder, washing compound liquid, soap, soap powder, Lux liquid, and vegetable oil or any other commodity which had not in fact been produced or distributed by a meat packinghouse. He further found that plaintiff had been engaged in transporting such commodities without proper authority and recommended that a cease and desist order be entered.

Exceptions to the report and recommended order of the examiner were filed separately by plaintiff and by Kraft Foods. On September 24, 1959, Division 1 of the Commission issued a report and order affirming the hearing examiner's findings and directing plaintiff to cease and desist from performing the above-described transportation. Petitions for reconsideration of the report and order were filed by plaintiff and Kraft Foods. These petitions were denied on January 25, 1960. Plaintiff and the intervening plaintiffs then filed the instant action attacking the validity of the Commission's orders.

Plaintiff in his complaint here claims that the order of the Commission is erroneous, arbitrary, capricious, and an abuse of discretion, in substance as follows:

1. The Commission incorrectly found that certain specified commodities may not be transported by plaintiff when they have not been produced by or distributed by a meat packinghouse.

2. That the generic description "packinghouse products and supplies", as used in Morehouse's certificate, is for the sole purpose of identifying the particular articles that may be transported by him for the general public and contains no restriction with respect to the character of the consignor or consignee for which the transportation of such commodities may be performed.

3. That the certificate issued to plaintiff does not restrict the transportation by him to any commodity which has in fact been produced by, or is being distributed by a meat packinghouse.

4. That the decision of the Commission is a partial revocation of plaintiff's certificate of public convenience and necessity in violation of the Interstate Commerce Act, and

5. That the orders of the Commission are not based upon adequate findings because of the failure and refusal of the Commission and its hearing examiner to consider evidence of the transportation actually performed by plaintiff at the time of and prior to the investigation, and particularly evidence of the commodities actually transported and the business of the shippers for whom such commodities were transported before and after June 1, 1935.

In considering the scope of judicial review of orders of the Interstate Commerce Commission, several well-known principles must be kept in mind. First, the action of the Commission is presumed valid. The Commission alone is authorized to decide upon the weight of the evidence and the significance of the facts. Baltimore & O. R. Co. v. United States, 298 U.S. 349, 359, 56 S.Ct. 797, 80 L.Ed. 1209. The Court must sustain the Commission if its findings are supported by substantial evidence. Universal Camera Corporation v. N. L. R. B., 340 U.S. 474, 491, 71 S.Ct. 456, 95 L.Ed. 456. Cf. Watson Bros. Transportation Co. v. United States,

**944**

D.C.Neb., 59 F.Supp. 762, 768; Shaffer v. United States, D.C.S.D., 139 F.Supp. 444, 448.

■ The issues raised and the questions presented in this proceeding are (1) whether the Commission erroneously, arbitrarily or capriciously construed the certificate of plaintiff, insofar as it authorizes the transportation of "packinghouse products", as not authorizing the transportation of soap and related commodities not products or distributed by a meat packinghouse and (2), whether the Commission properly denied the admission of evidence of plaintiff's "grandfather" operations in construing his certificate, insofar as it authorized the transportation of "packinghouse products".

The Commission is authorized to classify motor carriers by the service they render, under section 204(b) of the Interstate Commerce Act, 49 U.S.C.A. § 304(b), which provides:

"The Commission may from time to time establish such just and reasonable classifications of brokers or of groups of carriers included in the term 'common carrier by motor vehicle', or 'contract carrier by motor vehicle', as the special nature of the services performed by such carriers or brokers shall require * * *."

It may attach to certificates issued to common carriers by motor vehicle terms and conditions respecting the services they may render, under section 208(a) of the Act, 49 U.S.C.A. § 308(a):

"* * * there shall, at the time of issuance and from time to time thereafter, be attached to the exercise of the privileges granted by the certificate such reasonable terms, conditions, and limitations as the public convenience and necessity may from time to time require, * * *".

The rendition of services by a motor common carrier not authorized by its certificate is prohibited by section 206 (a) (1) of the Act, 49 U.S.C.A. § 306(a) (1):

"* * * no common carrier by motor vehicle subject to the provisions of this part shall engage in any interstate or foreign operation on any public highway * * * unless there is in force with respect to such carrier a certificate of public convenience and necessity issued by the Commission authorizing such operations * * *."

Plaintiff contends that the Commission erroneously construed the words "packinghouse products" too narrowly and that carriers with authority to transport "packinghouse products" are authorized to serve not only meat packers, but non-packers producing the same or similar commodities.

While plaintiff argues that the Commission's decision herein is not consistent with any recognized principle involved in the interpretation of commodity descriptions, the Commission, in Dart Transit Co.—Investigation of Operations, 54 M.C.C. 429, 438, sustained, Dart Transit Co. v. Interstate Commerce Commission, D.C., 110 F.Supp. 876, found that a cleanser transported by the respondent was not within the commodity description "packinghouse products" as the commodity had not been produced or distributed by a meat packinghouse even though the cleanser was similar to the cleansers distributed by meat packinghouses.

In Safeway Truck Lines, Inc.—Investigation of Certificate, 74 M.C.C. 679, the respondent, a certified common carrier, contended it could transport flour-bleaching compounds under its "packinghouse products" authority. The Commission rejected this contention, and held that while "* * * chemicals and chemical compounds are listed in the appendixes in the Descriptions (61 M.C.C. 209) and Modifications (46 M.C.C. 23) cases as commodities which authorized carriers or packinghouse products may transport, the lists established in those cases are prefaced by the heading 'Articles Distributed by Meat-Packinghouses', thereby allocating to that category only those articles distributed by

meat packinghouses. Here the flour-bleaching compounds are distributed by a producer of drugs and chemicals, thus neither of the cited cases support respondent's contention and we conclude that its authority to transport packinghouse products does not permit the transportation of flour-bleaching compounds".

In Chrispens Truck Lines, Inc.—Investigation of Operations, 63 M.C.C. 625, the respondent transported soap, soap products and washing compounds for B. T. Babbitt, Inc. and Lever Brothers. It was argued that these commodities were included in the "packinghouse products" lists and therefore were included under its authority to transport "packinghouse products" regardless of whether they were products of or distributed by meat packinghouses. The Commission, in rejecting this argument, held:

"The purpose of the proceeding in the Modification case was to determine the meaning of the term "packinghouse products" and related terms in order to permit carriers having such authority to give a full and complete transportation service for meat packinghouses. The intention was to identify the various commodities produced or distributed by meat packinghouses which were comprehended by the term "packinghouse products". The commodity lists set forth did not purport to identify commodities which could be transported without regard to who produced them or by whom they were distributed. Respondent in transporting the described commodities is serving two companies unrelated to meat packinghouses. It justifies its operations on the grounds that it finds the names or the classes of the commodities shipped by these nonpackers in the list appended to the Modification report. We cannot agree with respondent's position. If construed as respondent would have us construe its authority, the interpretation would extend the carrier's rights far beyond that intended or even proposed when the authority was sought and permit it to serve the needs of many other industries in the transportation of commodities not in fact produced or distributed by meat packinghouses. * * *."

In two recent decisions, Argo-Collier Trucklines Corp. Est.—Cleaning Compounds, 83 M.C.C. 433, 435, and Haugarth—Investigation and Revocation of Certificate, 83 M.C.C. 395, 398, the Commission has affirmed its view that common-carrier transportation of soap and soap products involved under existing authority to transport "packinghouse products" was beyond the scope of such authority because the commodities in question were neither produced nor distributed by a meat packinghouse.

Plaintiff here seeks to distinguish his situation from that before the Commission in the Chrispens case, contending that, unlike the respondent in the Chrispens case, he is a common carrier upon whom no "keystone" restriction, or limitation as to shippers or classes of shippers that he can serve, may be imposed. The Commission held, however, that while the Chrispens case involved the permit of a contract carrier, the reasoning from a commodity standpoint was applicable to plaintiff here. That plaintiff's certificate was not unrestricted, because by its very terms the transportation authorized therein was limited to certain classes of commodities, namely, "packinghouse products". Plaintiff is not limited as to the shippers he may serve, however, this does not mean that the limitations inherent in his commodity authorization can be ignored or that the commodity description "packinghouse products" in his certificate authorizes any different transportation, commoditywise, than the same authority in a permit. The fact that plaintiff is unrestricted as to the shippers he may serve affords no basis whatever for the expansion of the scope of the commodity description in any permit issued by the Commission.

946

In construing analogous commodity descriptions the Commission has consistently held them not to be restrictive of the shippers or class of shippers that the carrier can serve. See and compare Andrew C. Nelson, Inc.—Investigation of Operations, 63 M.C.C. 407, 410, sustained Andrew G. Nelson, Inc. v. United States, D.C., 150 F.Supp. 181, affirmed, 355 U.S. 554, 78 S.Ct. 496, 2 L.Ed.2d 484, where the Commission held that the commodity limitation in its permit does not limit the class or type of persons with whom it may contract as would a "keystone" restriction; and Sanders Extension of Operations—Washington, D. C., 74 M.C.C. 210, 213–214, where the Commission held that as long as the commodities transported are such as are dealt in by wholesale and retail grocery stores, respondent was free to transport them for any shipper or consignee regardless of the business in which he or it is engaged.

■ The Statutory court in Ace Lines, Inc. v. United States, 14 Fed.Car. Cases, paragraph 18 (S.D.Ia.1960), recently declared that the primary responsibility for interpreting certificates and determining what items fall within a commodity description contained in a certificate rests in the Interstate Commerce Commission. It is for the Commission rather than the courts to select and apply the tests to be used in determining what commodities fall within a commodity description. If the Commission's action in these respects is not arbitrary or capricious or the result of an abuse of discretion, or induced by an erroneous view of the law, the court will not interfere.

Plaintiff here is authorized to transport "packinghouse products" for whoever chooses to avail himself of plaintiff's services; however, this does not enlarge the description of the commodities that plaintiff may transport so as to include soap and related products not produced or distributed by a meat packinghouse.

■ Plaintiff contends that he has continuously since 1938 published rates and has had on file with the Commission tariffs naming rates on the commodities which he was transporting in 1938 pursuant to the descriptions "packinghouse products and supplies" for anyone who sought his services within the territorial scope of his operating authority. These tariffs list soap, powders, washing compounds, soda and alkali products among the commodities on which the rates applied. However, the Commission has consistently held that commodity classifications for rate purposes do not control interpretations of commodity descriptions in a motor carrier's operating rights, Western Auto Transport, Inc., Ext.—Colo. and N. Mex., 81 M.C.C. 71, 74 and cases cited there. The fact that Plaintiff here may have published rates on soap and related commodities without indicating in its tariffs the limitations upon the movements of such commodities imposed by the commodity description in its certificate would in no way enable him to transport commodities which in fact are not "packinghouse products" not produced or distributed by a meat packinghouse.

In Dart Transfer Co. v. Interstate Commerce Commission, supra, at 110 F.Supp. 880, the court, speaking through Judge Sanborn stated:

"* * * In Noble v. United States, 319 U.S. 88, 93, 63 S.Ct. 950, 952, 87 L.Ed. 1277, the Supreme Court said that 'The precise delineation of an enterprise which seeks the protection of the 'grandfather' clause had been reserved for the Commission.' By the same token, we think that within reasonable limits it is for the Commission to determine the scope of the delineation. The meaning of words may be a question of law or a question of fact. (citing cases) Words may have one meaning when used in industry or. in the regulation of industry and another meaning when used in common speech. We are not convinced that in the interpretation

of Dart's permit the Commission misapplied the law or exceeded its jurisdiction. * * * In the interest of uniformity in the regulation and policing of the motor carrier industry, it is of course essential that the Commission be subjected to as little judicial interference as the law will permit."

We are satisfied that the Commission's interpretation of the words "packinghouse products and supplies" is not arbitrary or capricious, and that the Commission reached a permissible conclusion in making the interpretation that it did. We are not convinced that any finding of the Commission was clearly wrong. There was factual and legal basis for the Commission's order; and, in our opinion, it was not the result of any abuse of discretion on the part of the Commission.

Finally, plaintiff contends that the Commission, in rejecting all evidence of plaintiff's operations conducted at the time his authority was issued, committed fundamental error and that he was thereby deprived of due process. It is argued that the certificate issued to plaintiff on February 26, 1942, embraced all of the operations conducted by him during the "grandfather period," including the transportation of soap for non-packers.

The report and order of the Commission here did no more than interpret the authority to transport "packinghouse products and supplies" as found in plaintiff's certificate, and such interpretation, declaratory of the operating authority possessed by plaintiff, in no way modified or revoked his rights. We are in agreement with the Commission, that plaintiff's remedy, if his certificate does not reflect completely the "grandfather" operations he performed, lies, not in attacking the Commission's construction of the term "packinghouse products", but in having the "grandfather" proceedings reopened for modification of his operating rights. Andrew G. Nelson, Inc. v. United States, 355 U.S. 554, 561–562, 78 S.Ct. 496, 2 L.Ed.2d 484.

This memorandum shall constitute the Court's findings of fact and conclusions of law, as provided by rule 52(a), Federal Rules of Civil Procedure, 28 U.S.C.

Judgment will be entered dismissing the complaint.